CHICKASHA FLYING SERVICE and the
State Insurance Fund, Petitioners,

v.

Jewel CAREY and the State Industrial Com-
mission of the State of Oklahoma,
Respondents.

No. 38489.

Supreme Court of Oklahoma.

Oct. 20, 1959.

Mont R. Powell, Oklahoma City, Moraul
Bosonetto, Sapulpa, for petitioners.

Murphy & Booth, Oklahoma City, Mac
Q. Williamson, Atty. Gen., for respondents.

BERRY, Justice.

On March 3, 1956, Jewel Carey, herein-
after referred to as claimant, filed an
amended claim for compensation against
his employer, Chickasha Flying Service,
and its insurance carrier, State Insurance
Fund, hereinafter referred to as petition-
ers, stating that on December 21, 1955, he
sustained an accidental injury to his arm
and neck while in the employ of American
Dusting Company (name of employer was
thereafter changed to Chickasha Flying
Service). The injury occurred while he
was engaged in pulling a dolly with an en-
gine on it. He notified his employer of the
injury and was paid temporary total com-
pensation and furnished medical attention
for same until the 3rd day of January,
1956, when his employer discontinued tem-
porary total compensation payments and
discontinued furnishing medical treatment.

On March 3, 1956, claimant also filed an
application with the Commission for fur-
ther temporary total compensation and
further medical treatment. At the hear-
ing of that motion it was stipulated that
claimant's employer at the time he sus-
tained his injury was Chickasha Flying
Service and that the name of the employer
mentioned in the claim as American Dust-
ing Company may be treated as amended to
substitute for such name Chickasha Flying
Service; that on the day stated in the

amended claim claimant sustained an accidental injury arising out of and in the course of his employment with petitioner, Chickasha Flying Service; that his wages were sufficient to entitle him to the maximum rate of $28 per week.

The trial judge as the close of the evidence at that hearing awarded claimant further temporary total compensation in the sum of $345.43 and reserved for future consideration the question as to the extent of permanent partial disability.

On September 21, 1956, the above case came on for hearing before a trial judge for the purpose of determining the extent of permanent disability. The trial judge at the close of the evidence found:

"That on December 21, 1955, claimant was employed by respondent in a hazardous occupation within the purview of the Workmen's Compensation Law, and on said date sustained an accidental personal injury to his right arm and neck, arising out of and in the course of his employment.

\*    \*    \*    \*    \*    \*

"That as a result of said injury to his neck, claimant sustained 7% permanent partial disability to his body as a whole and as a result of his injury to his right arm he sustained 8% permanent partial disability to said arm, for which disability he is entitled to compensation for 55 weeks at $28.00 per week, or the sum of $1,540.00, of which 26 weeks have accrued to October 16, 1956."

Upon such findings the trial judge entered an award in favor of claimant in the sum above mentioned. This award as well as the award for temporary total compensation has been fully paid and satisfied.

On January 17, 1958, claimant filed a motion to reopen and for additional compensation on the ground of change in condition for the worse. At the close of the evidence at that hearing the trial judge found:

"That on October 19, 1956, an order was entered herein awarding claimant

7% to the body as a whole as a result of his neck injury and 10% (record shows 8%) disability to his right arm as a result of his arm injury.

"That as a result of said injury, claimant has sustained a change of condition for the worse and now has 50% permanent disability to his body as a whole, for which disability claimant is entitled to compensation for 250 weeks, less the 55 weeks permanent partial disability heretofore awarded and paid him under the order of October 19, 1956, or is entitled to 195 weeks permanent partial disability compensation at $28.00 per week, in the amount of $5,460.00, of which amount 12 weeks have accrued to August 29, 1958, and shall be paid in the lump sum of $336.-00, balance of said award to be paid at the rate of $28.00 per week from August 29, 1958."

Upon such findings the trial judge awarded claimant additional compensation in the sum above mentioned which award was sustained on appeal to the Commission en banc.

Petitioners bring the case here to review that award, contending that it is not supported by the evidence and is contrary to law.

▆▆▆▆ Claimant at the last-referred-to hearing testified that his condition was then worse than at the time the original award was made in that all of his neck is sore all of the time; that he has burning, shooting pains in his neck, across his shoulder, down his right arm and into his hand; that his right arm hurts more than it did and is stiffening; that he has more trouble using it, such as picking up small articles, forks and knives and his arm has gotten weaker and he doesn't have much grip in his hand; that his left arm has also been bothering him for several months; that the dizzy spells which he testified to at the original hearing have become more frequent and more severe; that he is now unable to do ordinary manual labor; that prior to sustaining the injury in contro-

versy he, on or about September 3, 1938, sustained an injury (hereafter referred to as "old injury") consisting of an injury to his lower back, while working for the City of Chickasha; that he received temporary total compensation for such injury for 300 weeks at the rate of $8.40 per week, and that he thereafter filed a motion in that case to reopen and for additional compensation on the ground of change of condition.

The old case was settled on joint petition and claimant received additional compensation because of change of condition for the worse in the sum of $700. On April 19, 1939, claimant wrote a letter to the chief counsel for the State Insurance Fund in which he stated his spine pained him all the way from the bottom to the base of his brain; that he had severe pains in his head and neck for the past few days, and that his arms and legs felt like they were asleep at times and he could not straighten up without hurting his back and spine. The entire record and files of the old case, including the transcript of the evidence taken at that hearing were offered in evidence by agreement. It appears from petitioners' brief that the purpose of offering the record of the old case in this case was to establish that the condition from which claimant is now suffering is no greater than the condition suffered by him as a result of the 1938 injury. We have examined the evidence taken at that hearing and do not agree that the evidence establishes that such are the facts.

Claimant testified that as a result of the old injury he was unable to work from June 12, 1946, until sometime in 1951, when he returned to work; that he first went to work at Tinker Field where he worked for about three years; that he was "bumped" because of the seniority rule; that he then went to work for Spartan Aircraft in Alabama and worked there for several months and then returned to Chickasha because of illness of his family and thereafter went to work for his present employer in 1955 and remained in that employment un-

til he sustained his injury of December 21, 1955. Thus it appears that claimant had sufficiently recovered from his back injury sustained in 1938 to permit him to return to work, obtain gainful employment and continue such employment until the time he sustained his present injury, during all of which time he drew full wages.

At the January 17, 1958 hearing on the claim for additional compensation because of change of condition that is directly involved, claimant offered in evidence the written reports of Dr. B., Dr. H., and Dr. P. Dr. B. in his report stated:

"I examined Jewell Carey on the following dates: March 22, 1956; May 1, 1956; August 18, 1956; September 21, 1956; November 8, 1957; and today. The movements, both active and passive, of this man's arm (right) is more limited that it was upon my examination in 1956. He is now unable to actively spread the fingers of the right hand. Lateral movements and flexion extension of the head and neck are more limited. He now has pain and limitation of the left arm but in a lesser degree than the right. He complains of greater pain in the shoulder and lower cervical region and he has headaches, which he says are more severe than they were in the earlier and middle part of 1956.

"It is my opinion that Jewell Carey is now worse than he was in October, 1956, the date of which I have been informed an order was made in behalf of the Claimant."

Dr. H. in his written report filed July 23, 1958, states that Mr. Carey has presented himself again for examination; that since Dr. H.'s report dated July 12, 1957, Mr. Carey reports there has been a progression of his neck symptoms and his right arm; that his left shoulder and left arm are becoming involved; that he has more frequent dizzy spells, more frequent headaches, a tendency to black out, and that he has more limitation to taking a deep breath and a sensation of shortness of

breath. Dr. H., after further stating in detail conditions found to exist, reached the following conclusion:

"This man still, in my opinion, continues to be totally disabled from ordinary manual labor. His shoulder, hand and neck symptoms I believe are on the basis of cervical degenerative arthritis with bony lipping and spurring pressing on nerve roots with the possibility of a herniated intervetrebral disc complicating the picture.

"If he does have a ruptured intervetrebral disc it is not of the extent to *dimish* reflexes or to produce muscle atrophy.

"My opinion of total permanent disability is based on a combination of his painful complaints about head, neck, shoulder, which I attribute to degenerative arthritis primarily and to his rather profound and disabling emotional disorder. I do not feel competent to equate the degree of his emotional disorder or disability as relates to the accident mentioned December 21, 1955, but I do feel this accident has had accelerating influence upon a previously asymptomatic degenerative cervical arthritis to a presently rather significantly symptomatic and disabling state.

"This degree of acceleration, I believe is 30 percent so far as it relates itself to permanent partial disability to the body as a whole for performance of ordinary manual labor and related to the accident of December 21, 1955."

Dr. P. in his report filed August 9, 1958, states that he obtained a history of the case from claimant to the effect that he had sustained an accidental injury in December, 1955, at which time he hurt his right arm pulling a dolly in the aircraft hangar at Chickasha; that the arm was swollen and painful for the next few days; and that he had been treated by several doctors and was hospitalized for such injury. The doctor further stated this man has been examined on repeated occasions which include May 9, 1956, December 18, 1956, May 17, 1957, August 26, 1957 and July 23, 1958. The doctor then concluded:

"The patient continues to have severe handicapping and painful symptoms of both organic and psychic origin. In addition to the permanent handicapping to the right arm, the left arm drags, bothers and is clumsy and awkward. The neck is painful and he has severe pain that radiates across the base of the neck and down the right side of the chest. At times, his throat feels full, the heart pounds and he grows quite breathless. Dizziness has persisted and has increased and causes him to stumble and to have to grasp for balance. He has feelings of blacking out though he does not actually lose consciousness and instead is dizzy and stumbles about.

"The diagnosis is therefore that of Psychoneurosis, Hysteria, Conversion, with psychosomatic manifestations including neurovascular changes of the right arm and the residuals of a post-traumatic ulnar neuritis, right. The disorder is chronic, of long standing, and increases in severity. Currently, he is completely disabled from performing any manual labor and it is my opinion that he will, by conservative estimation, have a permanent disability of 80 to 90%. Treatment would be extremely difficult and probably unproductive of benefits. The disorder is, in my opinion, one which grows out of the injury which he received in December of 1955."

There is medical evidence to the contrary but we think the evidence of the above doctors is sufficient to sustain the finding and award of the State Industrial Commission. In Bartlett-Collins Company v. Alspaw, Okl., 325 P.2d 1068, 1069, we said this in the syllabus:

"Whether a disability of an injured employee is the result of an accidental injury or a prior injury or disease is a question of fact and if there is any competent evidence reasonably tending

to support the finding of the State Industrial Commission an award based thereon will not be disturbed on review."

Award sustained.